UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLOU H.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br><br>Defendant. | Case No.:  3:24-cv-02118-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 24]** |

Plaintiff Marlou H. ("Plaintiff") filed this action on November 12, 2024, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income. ECF No. 1. The parties consented to proceed before a Magistrate Judge on November 18, 2024. ECF No. 6; General Order 707 (S.D. Cal. Apr. 12, 2019). Pursuant to the Court's Order, the parties filed a Joint Motion

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Although Plaintiff originally brought this action against Former Commissioner Martin O'Malley, this case may properly proceed against Frank Bisignano pursuant to 42 U.S.C. § 405(g).

for Judicial Review ("Joint Motion") on July 14, 2025. ECF No. 24. The Court has taken the Joint Motion under submission without oral argument.

For the reasons set forth below, the Court resolves the Joint Motion in Plaintiff's favor, **REVERSES** the Commissioner's final decision, and **REMANDS** this action for the calculation and award of benefits.

I.   **PROCEDURAL BACKGROUND**

On August 10, 2018, Plaintiff filed an application for Supplemental Security Income, alleging disability as of August 1, 2018, due to anxiety, depression, and post-traumatic stress disorder ("PTSD"). AR 198, 221. The application was denied initially and on reconsideration, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 81–108, 127–28. A hearing was held on October 20, 2020. AR 33–74. On November 19, 2020, the ALJ issued a decision denying Plaintiff's application. AR 28. The Appeals Council denied Plaintiff's request for review on July 26, 2021, rendering the ALJ's decision the final decision of the Commissioner. AR 1, 195–97.

Plaintiff timely appealed the Commissioner's final decision to this Court on September 7, 2021. AR 544-47. On March 22, 2023, the Court found that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons and remanded the matter for further administrative proceedings. AR 555-72.

While that appeal was pending, Plaintiff filed a subsequent application for Supplemental Security Income on August 5, 2022. AR 579. The State Agency found Plaintiff disabled on the subsequent claim on March 24, 2023. AR 579–85. Following remand in the present matter, the ALJ conducted a hearing on May 14, 2024. AR 490–518. On July 17, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled between August 1, 2018, and August 4, 2022. AR 613. The ALJ decision became the final decision of the Commissioner, and Plaintiff filed this action on November 12, 2024. ECF No. 1.

//

3:24-cv-02118-AHG

## II.      <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Further, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability

determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.   <u>SUMMARY OF ALJ'S FINDINGS</u>

An ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, an ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *see also* 20 C.F.R. § 416.920(a)(4). Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of August 1, 2018. AR 604.

At step two, an ALJ must determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Lounsburry*, 468 F.3d at 1114. Here, at step two, the ALJ determined that Plaintiff has the following severe impairments: depression and PTSD.[2] AR 604.

At step three, an ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listings") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsburry*, 468 F.3d at 1114. Here, the ALJ determined that Plaintiff's severe impairments, separately or in combination, do not meet or medically equal an impairment in the Listings. AR 605.

Between step three and step four, an ALJ must determine the claimant's residual functional capacity ("RFC"). An RFC is "an assessment of an individual's ability to do

---

[2] At step two, the ALJ did not include anxiety as a severe impairment, although it had been found severe in the underlying case (No. 21-cv-1574; AR 21). This omission does not affect the Court's analysis. AR 604.

sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" taking into consideration the "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Soc. Sec. Ruling ("SSR")[3] 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 416.945(a)(1)–(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). The RFC determination is an administrative finding reserved to the ALJ. 20 C.F.R. § 416.946(c). It must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945(a)(3).

Here, the ALJ assessed that Plaintiff's RFC allows her "to perform a full range of work at all exertional levels but with the following nonexertional limitations: understanding, remembering, and carrying out simple, routine, repetitive tasks with breaks every two hours; no interaction with the general public; occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; cannot perform highly time-pressured tasks; is limited to generally goal-oriented work, not time-sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

that are fast paced); must work in a low-stress environment where there are few workplace changes; minimal decision-making capability such that [the claimant] would be unable to exercise substantial discretion in carrying out work activities." AR 607.

At step four of the disability analysis, if an ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.* Here, at step four, the ALJ determined that Plaintiff did not have past relevant work. AR 612.

At step five, the burden shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c)(1), (c)(2); *see also* 20 C.F.R. § 416.920(g)(1).  An ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15. Here, at step five, the ALJ found that Plaintiff could perform the occupations of floor waxer (DOT 381.687-034), caretaker (DOT 301.687-010), collator operator (DOT 208.685-010), routing clerk (DOT 222.687-022), marker (DOT 209.587-034), and router (DOT 222.587-038), so the ALJ determined that Plaintiff was not disabled. AR 612–13.

## IV.   THE ALJ ERRED IN DISCREDITING PLAINTIFF'S TESTIMONY

### A. Parties' Positions

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ—both in the initial decision and on remand—discounted Plaintiff's subjective symptom testimony without identifying the specific statements at issue or providing clear and convincing reasons for rejecting them. ECF No. 24 at 5, 10–14. Plaintiff further argues that, despite the absence of any medical opinion evidence

addressing Plaintiff's functional limitations, the ALJ nevertheless relied on his own interpretation of the medical record. *Id.* at 6-9. Plaintiff maintains that these errors were harmful and that remand for an award of benefits is warranted under the credit-as-true doctrine. *Id*. at 25.[4]

Defendant responds that the ALJ did not err in evaluating Plaintiff's testimony and contends that the RFC reasonably accounted for Plaintiff's limitations. *Id.* at 17–19. Defendant maintains that the ALJ properly relied on Plaintiff's ability to attend an amusement park and volunteer in a substance abuse program as inconsistent with her allegations. *Id.* at 20. Defendant further argues that the absence of inpatient psychiatric hospitalizations supports the ALJ's findings. *Id.* Alternatively, Defendant asserts that, even if error occurred, remand for an award of benefits would be inappropriate because the record does not establish disability. *Id*. at 26.

For the reasons discussed below, the Court concludes that the ALJ again committed reversible error in evaluating Plaintiff's subjective symptom testimony.

**B. Plaintiff's Subjective Symptom Testimony on Remand**

The ALJ reviewed Plaintiff's statements regarding the severity, persistence, and functional impact of her mental health symptoms, as reflected in her Disability Reports and her testimony at the May 14, 2024 hearing on remand. AR 492–518. In her Disability Report dated August 10, 2018, Plaintiff reported that she was unable to work due to anxiety, depression, and PTSD. AR 221. In a subsequent Disability Report dated December 31, 2018, Plaintiff reported worsening symptoms, including problems sleeping, heightened anxiety, and panic attacks accompanied by shortness of breath and chest pain. AR 237. As to daily activities, the report states that "[d]ue to depression and anxiety, personal hygiene can be forgotten. It can take days to be able to take care of those needs.

---

[4] Plaintiff additionally argued in the Joint Motion that the Administrative Record was incomplete. The Commissioner has since filed a supplemental record completing the Administrative Record. ECF No. 23. Accordingly, this issue is resolved.

3:24-cv-02118-AHG

[Plaintiff] doesn't leave the house much except for doctor appointments. She has trouble focusing or completing tasks such as chores." AR 241. The report further states that Plaintiff's condition was worsening, and that she "has crying spells that she can't control and panic attacks. The attacks cause shortness of breath, chest pain, and insomnia." AR 242.

At the hearing on May 14, 2024, Plaintiff testified that she was unable to work during the relevant period due to PTSD, depression, and anxiety stemming from the murder of her younger brother, who had also been her roommate. AR 500–01. She described experiencing daily crying spells and falling into what she characterized as a "deep, deep depression," accompanied by difficulty concentrating. AR 501. Following these episodes, Plaintiff testified that she felt weak, hopeless, and emotionally withdrawn, often staring off and isolating herself. AR 505. She further reported persistent symptoms including loss of appetite, insomnia, mistrust of others, and reluctance to leave her home except when necessary. AR 501. Plaintiff testified that her concentration was so limited that she could focus on a television program for only about five minutes before losing focus and hearing things. AR 503–04. She also testified that she takes psychiatric medication and participates in therapy. AR 502, 504.

### C. Continued Issues in the Evaluation of Plaintiff's Subjective Symptom Testimony on Remand

In the underlying action, the Court explained that an ALJ evaluating subjective symptom testimony must do more than summarize the medical record or cite general findings. Where a claimant describes distinct symptoms—such as anxiety, panic attacks, crying spells, insomnia, and difficulty concentrating—the ALJ must identify the specific testimony being discounted and explain how particular evidence undermines each statement. The Court further explained that isolated activities, temporary improvement, or selective references to treatment records do not satisfy this standard without a clear explanation of how they translate into an ability to sustain employment.

3:24-cv-02118-AHG

On remand, however, the ALJ did not cure these deficiencies. Rather than applying the Court's instructions, the remand decision largely repeats the same errors by failing to meaningfully engage with Plaintiff's specific statements or to provide clear and convincing reasons, supported by substantial evidence, for discounting them.

First, the ALJ again treated Plaintiff's symptom allegations as a single unitary complaint, rather than addressing her distinct statements individually. For example, the ALJ grouped allegations of social anxiety, isolation, and difficulty with concentration together and rejected them collectively based on "routine outpatient mental health treatment" and Plaintiff's "stable mental state." AR 610. The decision does not explain how routine outpatient treatment undermines Plaintiff's testimony that she cannot interact with others, maintain concentration, or function consistently in a work setting. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[O]ur precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [Plaintiff's] testimony was inconsistent with her medical treatment."). The ALJ also stated that Plaintiff "can perform a significant array of activities of daily living independently demonstrating [her] ability to maintain overall well-being," while elsewhere noting that Plaintiff reported forgetting personal hygiene and taking days to attend to basic needs due to depression and anxiety. AR 606. The ALJ did not reconcile these points or explain how the cited evidence discounted Plaintiff's testimony, again failing to link specific evidence to specific statements as required.

The ALJ's review of the July 2018 treatment notes also repeats the prior error. Although the ALJ summarized the treatment notes, he did not identify specific testimony or effectively explain how the cited evidence undermined Plaintiff's statements. Instead, the ALJ reiterated his prior observation that Plaintiff "reported a positive response to medication for anxiety," despite the Court's earlier instruction that the same treatment notes documented ongoing severe symptoms, including flash backs, dissociation, panic attacks, insomnia, gastrointestinal upset, avoidance, and social isolation. AR 24, 284, 608. Merely reciting medical evidence in support of an RFC determination does not constitute

specific, clear, and convincing reasons for discounting a claimant's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ also again relied on Plaintiff's report that she attended a single amusement park outing with her daughters. The ALJ stated that this outing "contradicts testimony of rarely being able to leave the home or function," without explaining how a single, supported family outing undermined Plaintiff's statements regarding anxiety, panic attacks with shortness of breath and chest pain, crying spells, or insomnia. AR 608. Nor did the ALJ explain how this activity demonstrated an ability to sustain competitive employment. This reasoning is particularly problematic given the Court's prior instruction identifying the same reasoning as insufficient.

As the Court previously explained, participation in a limited activity with family support is not inherently inconsistent with allegations of significant mental health limitations. Characterizing the Six Flags outing as contradictory—without addressing the context of family support, the isolated nature of the activity, or the extensive treatment notes documenting persistent symptoms—amounts to conclusory reasoning that does not satisfy the clear and convincing standard. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("[T]he ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives 'specific, clear and convincing reasons' for the rejection."). Nor does attending an amusement park with family demonstrate "capacities that are transferable to a work setting." *Jacob P. v. Comm'r of Soc. Sec.*, No. 3:19-cv-06063-JRC, 2020 WL 5747813, *4 (W.D. Wash. Sep. 25, 2020); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error where an ALJ failed to "specifically link the testimony" about the claimant's daily activities to the conclusion that the claimant's testimony lacked credibility and made "absolutely no finding to the effect that the ability to perform those daily activities translated into the ability to perform appropriate work").

Elsewhere in the decision, the ALJ similarly relied on Plaintiff's volunteer activity at an outpatient drug and alcohol treatment program as inconsistent with her testimony. AR 606. The ALJ did not account for the context of this activity. Participation in a

volunteer role within a treatment-related program typically involves a structured, supportive, and familiar environment and may be undertaken at an individual's own pace—conditions not comparable to competitive employment. Such activity does not require regular attendance, adherence to workplace expectations, or ongoing interaction with supervisors and coworkers.

One of the few substantive additions the ALJ made in the decision on remand was the assertion that Plaintiff "managed to continue working despite this event until 2017," referring to the 2000 murder of Plaintiff's brother and her subsequent PTSD diagnosis. AR 608. This characterization is inaccurate. The Commissioner previously determined that Plaintiff was disabled from February 1, 2006 to June 1, 2007, due to PTSD and major depressive disorder. AR 75. Although Plaintiff returned to work after that period, the record does not reflect continuous employment through 2017. Instead, Plaintiff worked only intermittently in isolated years—2008, 2009, 2015, 2016, and 2017—with multi-year gaps during which she did not work at all. AR 215. The ALJ did not account for these extended periods of non-employment or explain how this disrupted work history undermined Plaintiff's testimony regarding her ongoing mental health limitations.

Finally, the ALJ introduced a new rationale on remand by characterizing Plaintiff's mental health condition as "stable" based on the absence of psychiatric hospitalization or emergency treatment. AR 610. Although the ALJ acknowledged periods of improvement and exacerbation, he concluded that Plaintiff's condition was stable because she had no psychiatric emergency room visits, no psychiatric hospitalizations, no suicide attempts, and received routine outpatient treatment. This reasoning is flawed. The absence of psychiatric hospitalization or emergency care is not inconsistent with disabling mental health symptoms, particularly where the record reflects ongoing treatment with psychiatric medication and persistent functional complaints. *See Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018) (rejecting an ALJ's characterization of treatment as "limited and conservative" where the claimant was prescribed multiple psychiatric medications); *Quiroz v. Berryhill*, No. 8:16-CV-02127-GJS, 2018 WL 922130, at *7 (C.D. Cal. Feb. 14, 2018)

3:24-cv-02118-AHG

("Nothing in Social Security jurisprudence requires mentally impaired claimants to be subjected to harsh treatments—whether involuntary psychiatric hospitalizations . . . or other non-routine care—before they can be found to be disabled.") (internal quotations omitted); *Matthews v. Astrue*, No. EDCV 11–01075–JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) ("Claimant does not have to undergo inpatient hospitalization to be disabled.").

Accordingly, the ALJ's decision on remand does not meaningfully apply the standards articulated by the Court. Nor did the ALJ fulfill his duty to further develop the record, as discussed below.

**D. Record Development on Remand**

In its remand order, the Court found that the administrative record contained gaps indicating that further proceedings would be useful. The record did not include a medical opinion from an examining source—either a treating physician or a consultative examiner—addressing Plaintiff's functional limitations. The Court further noted that the absence of such an opinion was significant given that Plaintiff's alleged impairments were mental rather than physical, rendering professional medical interpretation particularly relevant. Although the record contained extensive treatment notes documenting Plaintiff's depression and anxiety, it did not include a medical evaluation explaining how those conditions affected Plaintiff's ability to perform sustained work activity— an omission that was particularly consequential in light of the vocational expert's testimony that an inability to sustain work would eliminate all jobs in the national economy.

In Social Security proceedings, the ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Despite the Court's guidance, the record was not further developed to include medical opinion evidence addressing Plaintiff's functional limitations. Throughout Plaintiff's disability claim, the record contains two medical opinions, both from non-examining state agency consultants. On October 29, 2018, state agency psychologist Ben G. Kessler, Psy.D., opined that Plaintiff's mental impairments did not support a finding of

3:24-cv-02118-AHG

disability due to insufficient evidence. AR 85–86. On February 11, 2019, state agency psychologist David Strand, Ph.D., affirmed Dr. Kessler's assessment and likewise concluded that Plaintiff's mental impairments were not severe. AR 94–95, 103–05. The ALJ found both opinions unpersuasive. AR 611. The ALJ also acknowledged that the record contained no medical opinions from treating or consultative sources relating to the period in question. AR 611.

The hearing transcript on remand further confirms that the ALJ recognized this unresolved evidentiary issue. In an exchange with Plaintiff's counsel, the ALJ agreed that it was pertinent to understand why Plaintiff was later approved for disability and expressed concern about the inconsistency between prior non-severe findings and the subsequent award. The ALJ further acknowledged that the absence of medical opinion evidence left an open question in evaluating Plaintiff's mental limitations:

> Attorney: So, I think the reason why it's so pertinent to find out about why she was approved is because—
>
> ALJ: Yeah, I agree.
>
> Attorney: The state agency and at the reconsideration position all found her limitations, her impairments non-severe.
>
> ALJ: Right, it's like it goes from non-severe all the way to being granted, so I'm kind of curious, okay, what happened, what is it that they're looking at. So, I mean, I'm going to give a full range of mental limitations now but if there's somebody [who] already adjudicated this case, you know, that's definitely pertinent to what I'm doing.
>
> Attorney: And that's one of the issues that the District Court judge also had, saying that there was no mental health opinion to kind of furnish these limitations.
>
> ALJ: Yeah, so it's like now I'm—that really poses a question, you know…

AR 512–13.

Where evidence is ambiguous, or where the ALJ himself recognizes that the record is inadequate to permit proper evaluation, the duty to conduct an appropriate inquiry is triggered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also Smolen*, 80

F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *Kohlbatz v. Berryhill*, No. EDCV 17-1157 JC, 2018 WL 2059645, at *4 (C.D. Cal. Apr. 30, 2018). As the "final arbiter with respect to resolving ambiguities in the medical evidence," the ALJ should have taken the additional steps to acquire a medical opinion to inform how Plaintiff's conditions affect her ability to perform sustained work. *Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902, at *4 (C.D. Cal. July 28, 2021). The ALJ did not act on this duty.

Rather than further developing the record, the ALJ interpreted raw medical data. The ALJ evaluated a record that reflected numerous abnormal mental status findings over several years, including observations of distress, tearfulness, anxiety, tangential, or circumstantial thought processes, and dysphoric affect. *See, e.g.,* AR 283–87, 292–94, 299–300, 484, 836, 868. Based on these findings, the ALJ concluded that Plaintiff could not perform highly time-pressured work, was limited to minimal decision-making, could engage in only occasional work-related interaction with coworkers and supervisors, and required a low-stress environment. AR 607. By translating these findings into functional limitations without medical guidance, the ALJ relied on his own lay assessment rather than medical expertise. Courts have repeatedly rejected this approach, holding that an ALJ may not act as his own medical expert. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (establishing that an ALJ is not qualified to interpret raw medical data and translate it into functional limitations without the benefit of medical expertise); *see also Kohlbatz v. Berryhill*, 2018 WL 2059645, at *4–5 (C.D. Cal. Apr. 30, 2018) (an ALJ may not infer functional limitations from raw medical evidence); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (an ALJ may not assume the role of a medical expert).

In its defense, the Commissioner relies on *Gilding v. Kijakazi* for the proposition that an RFC assessment is not undermined merely because it does not align with a medical opinion in the record. No. 20-15508, 2023 WL 2535268, at *1 (9th Cir. Mar. 16, 2023). That reliance is misplaced. In *Gilding*, the Ninth Circuit upheld the ALJ's RFC because it was supported by substantial evidence, including a ***medical opinion in the record*** apart

from the opinion the ALJ discounted. *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). Here, by contrast, the ALJ rejected the only medical opinions in the record and formulated the RFC without relying on any medical opinion evidence.

The Commissioner similarly relies on *Shaibi v. Berryhill* for the proposition that an ALJ may translate qualitative limitations into quantitative ones. 883 F.3d 1102, 1106–07 (9th Cir. 2017). That reliance is also misplaced. In *Shaibi*, the ALJ's translation of limitations was grounded in ***medical opinion evidence***, including examining and reviewing physician opinions and a mental RFC assessment with a "summary conclusions worksheet" that specifically addressed the claimant's ability to perform multiple mental activities in the workplace. *Id.* at 1105. Here, by contrast, the ALJ rejected medical opinion evidence, did not rely on a mental RFC assessment, and relied on his own lay interpretation of raw medical evidence.

The ALJ had alternatives available to further develop the record. The ALJ could have obtained testimony from a medical expert at the hearing to review the existing record and provide expert interpretation. *See* 20 C.F.R. § 404.1513a(b)(2); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150–51 (9th Cir. 2001) (approving the use of a medical expert at the hearing and recognizing the ALJ's duty to fully and fairly develop the record, including in cases involving mental impairments). Alternatively, the ALJ could have remanded the matter to the state agency for reconsideration in light of additional medical evidence. Evidence submitted in connection with the subsequent application may have related to the period at issue here. *See* 20 C.F.R. § 404.948(c)(1). The ALJ elected not to resolve this ambiguity. As a result, the Commissioner's denial of disability benefits for this period should be reversed.

**E. The ALJ's Errors Were Not Harmless**

An ALJ's error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the ALJ's errors were not harmless because they directly affected the RFC assessment and, in turn, the nondisability determination.

3:24-cv-02118-AHG

The incorporation of certain mental limitations in the RFC—such as no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and restriction to jobs requiring only minimal decision-making—does not cure the ALJ's errors. AR 607. Those limitations were formulated without properly crediting Plaintiff's subjective symptom testimony. If Plaintiff's testimony is credited as true, the record does not support a finding that she could sustain employment, even with the limitations included in the RFC.

At the hearing, the vocational expert testified that an individual who is off task 15 percent or more of the workday on a regular and consistent basis would be unable to perform any work in the national economy:

> Q. If this person were off task 15 percent or more on a regular consistent basis every day, there'd be no more work for this person, right?
>
> A. Correct.

AR 515. Plaintiff testified that she experiences daily crying spells, significant difficulty concentrating, and an inability to focus for more than approximately five minutes at a time. AR 490–518. This testimony reasonably supports a finding that Plaintiff would be off task at least 15 percent of the workday on a sustained basis. Under the vocational expert's testimony, such limitations would preclude all work.

Accordingly, the ALJ's errors were consequential to the disability determination and therefore not harmless. The Court addresses the appropriate remedy below.

## V.    THE APPROPRIATE REMEDY

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Garrison*, 759 F.3d at 1019. Under the "credit-as-true" rule, a case may be remanded for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence

were credited as true. *Garrison*, 759 F.3d at 1020. Here, each of these factors weighs in favor of a remand for an award of benefits.

The first factor weighs in favor of a remand for benefits because, at this stage, the record is sufficiently developed to permit a disability determination, and further administrative proceedings would serve no useful purpose. The Court identified a gap in the record—the absence of an examining medical opinion—and the ALJ did not cure this gap on remand. That omission, however, does not warrant yet another remand where the existing record, once the improperly rejected testimony is credited as true, already establishes disability. The record contains extensive longitudinal treatment evidence documenting Plaintiff's mental impairments, detailed testimony describing the functional effects of those impairments, and vocational expert testimony establishing that an inability to sustain work would preclude all employment. Thus, the absence of a medical opinion does not create ambiguity requiring additional development where the credited evidence warrants a finding of disability. Under these circumstances, remanding solely to give the Commissioner another opportunity to develop evidence would serve no legitimate purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. The third factor likewise weighs in favor of a remand, because if Plaintiff's testimony concerning the limiting effects of her mental impairments were credited, there would be no jobs available, as confirmed by the vocational expert. The requirement to provide specific, clear and convincing reasons for rejecting a plaintiff's symptom testimony has been the standard in the Ninth Circuit for decades. *See Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (recounting the history of this requirement). The ALJ's failure to adhere to this standard warrants reversal, not an additional remand that would amount to a third chance to do what was required after two prior opportunities. Another remand "would create an unfair 'heads we win; tails, let's play again' system of disability benefits

adjudication" that is unwarranted in light of the record that already exists with respect to Plaintiff's claim for benefits. *Benecke*, 379 F.3d at 595.

Therefore, weighing the applicable factors, the Court finds the appropriate remedy is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so.

The Court therefore **REVERSES** the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and **REMANDS** this action for the calculation and award of benefits.

**IT IS SO ORDERED.**

Dated: February 18, 2026

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:24-cv-02118-AHG